382 S.E.2d 219 (1989)
95 N.C. App. 219
Joseph M. EWAYS, Plaintiff,
v.
GOVERNOR'S ISLAND, a North Carolina limited partnership and Allen Dukes-Jones Island partnership, Defendants,
v.
J.L. TODD AUCTION CO., Intervenor Defendant.
No. 883SC1252.
Court of Appeals of North Carolina.
August 15, 1989.
Henderson, Baxter & Alford, P.A. by B. Hunt Baxter, Jr., New Bern, for plaintiff appellant.
Kirby, Wallace, Creech, Sarda, Zaytoun & Cashwell by John R. Wallace, Adams, McCullough & Beard by Lisa M. Nieman, Raleigh, and Ward and Smith, P.A. by Michael P. Flanagan, Greenville, for defendants.
COZORT, Judge.
Plaintiff sued defendants seeking to recover money he was ordered to deposit by the United States Bankruptcy Court to secure his performance on a bid he made to purchase property owned by the defendant Governor's Island. The trial court dismissed plaintiff's suit for lack of subject matter jurisdiction. Plaintiff appeals. We affirm.
Defendant Governor's Island, a North Carolina limited partnership, and defendant Allen Dukes-Jones Island partnership owned an interest in an island located in Pamlico County. In 1983 both defendants filed petitions under Chapter 11 of the United States Bankruptcy Code. The Bankruptcy Court ordered defendant Governor's Island to market and sell the property. The defendant then applied to the Bankruptcy Court for permission to sell the property by public sale. The sale was subject to the approval of the Bankruptcy Court.
Intervenor defendant J.L. Todd Auction Company was chosen by defendant to conduct the public sale. The brochures prepared by J.L. Todd Auction Company provided that the sale was subject to announcements made by the auctioneer on the day of the sale. The auctioneer announced prior to bidding that the property was being sold subject to oil and natural gas rights held by third parties. It was also announced that defendants could not sell land located under navigable waters and that a fifteen-acre tract was being excluded from the sale. Plaintiff claims that he did not hear and was unaware of the announced restrictions. The public auction took place in January 1984. Plaintiff's bid of $1,960,000 for the entire island was the high bid. The Bankruptcy Court thereafter confirmed the sale to plaintiff upon *220 application of defendant Governor's Island. Plaintiff made a security deposit of $184,000 with J.L. Todd Auction Company.
After the sale was confirmed by the Bankruptcy Court, plaintiff notified defendants that he was unable to arrange financing to complete his purchase because of the restrictions on the title which had been announced at the auction, about which plaintiff claimed he was unaware when he made his bid. The closing did not occur as scheduled, and defendant Governor's Island filed an application with the Bankruptcy Court to order plaintiff's security deposit forfeited. The court concluded that plaintiff breached his obligation to purchase the property but decided to allow plaintiff additional time to close the sale. Plaintiff failed to complete the purchase.
The property was eventually sold at public auction for $1,100,000. Defendant Governor's Island then filed an action against plaintiff for $860,000, plus costs, the amount of deficiency between plaintiff's bid of $1,960,000 and subsequent sale price of $1,100,000. The Bankruptcy Court entered judgment against plaintiff for $294,000. Plaintiff appealed to the United States District Court, Eastern District of North Carolina.
The United States District Court decided to temporarily abstain from ruling on plaintiff's appeal from the Bankruptcy Court. The parties were allowed ninety days to file proceedings in state court to resolve issues concerning the quality of title offered by defendants. Plaintiff thereafter filed this action alleging that the title offered by defendants was not "good and marketable" title as the parties' contract required, given the restrictions on it announced at auction. The trial court dismissed plaintiff's suit for lack of subject matter jurisdiction.
Based on our Supreme Court's holding in Gilliam v. Sanders, 198 N.C. 635, 152 S.E. 888 (1930), we hold that a federal court cannot confer subject matter jurisdiction upon a state court where the highest court of this State has ruled that no such state court jurisdiction exists. In Gilliam, plaintiff, the appointed trustee of the bankrupt, filed suit in state court against defendant for failing to comply with his bid for real and personal property offered at public sale by the trustee pursuant to an order of the United States District Court. Id. at 635, 152 S.E. at 888. The trial court in Gilliam dismissed plaintiff's suit and our Supreme Court affirmed. Id. at 638, 152 S.E. at 890. The court reasoned as follows:
"In a proceeding to sell land for assets the court of equity has all the powers necessary to accomplish its purpose, and when relief can be given in the pending action, it must be done by a motion in the cause and not by an independent action. The latter is allowed only when the matter has been closed by a final judgment. If the purchaser fails to comply with his bid, the remedy is by motion in the cause to show cause, etc., and if this mode be not pursued, and a new action is brought, the court ex mero motu will dismiss it. This course is adopted to avoid multiplicity of suits, avoid delay and save costs. Hudson v. Coble, 97 N.C., 260 [1 S.E. 688], Pettillo, ex parte, 80 N.C., 50; Mason v. Miles, 63 N.C., 564, and numerous cases cited in them."
Id. at 637, 152 S.E. at 889-90 (quoting Marsh v. Nimocks, 122 N.C. 478, 29 S.E. 840 (1898)).
The policy expressed in Gilliam is that of keeping all proceedings related to the bankrupt's property within the equity jurisdiction of the District Court to avoid multiplicious suits, costs, and needless delay. In the opinion of the District Court, that policy is not in keeping with modern notions of abstention and comity. Since Congress has provided that federal courts may abstain from ruling on important issues of state law, and since no such abstention laws existed when Gilliam was decided, plaintiff contends that the federal abstention statutes "override any precedential argument stemming from Gilliam." We disagree.
*221 The policy of avoiding multiple suits, along with the accompanying costs and delay, rings more true today than it did in 1930 when Gilliam was decided. Today the state and federal courts are faced with an avalanche of litigation. Cf. Gordon v. Green, 602 F.2d 743, 745 n. 6 (5th Cir.1979) (where the court noted in passing on a particularly bad case of unnecessary litigiousness, which we hasten to add is not present here, that such cases "only hasten the speed at which our country's trees are being transformed into sheets of legal jargon.") Yet we recognize that plaintiff's complaint may raise important state law issues, and that to advance sound principles of federalism and comity we should resolve questions of such magnitude. On balance we find that Gilliam expresses sound policy. The federal courts are not unaccustomed to deciding questions involving state law, e.g., diversity cases, and unquestionably have the expertise to evaluate how the resolution of those issues relates to the overall bankruptcy case. But, more importantly, we are bound by Gilliam because it is indistinguishable from the present case. Therefore, the order dismissing plaintiff's complaint for lack of subject matter jurisdiction was correct.
Plaintiff also appealed the trial court's denial of his motion for summary judgment. Our affirmance of the trial court's dismissal of plaintiff's action precludes the necessity for considering this argument.
The order of dismissal is
Affirmed.
JOHNSON and GREENE, JJ., concur.